# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, ex rel., JOHN )
DOAK, INSURANCE COMMISSIONER, )
AS RECEIVER FOR PARK AVENUE )
PROPERTY AND CASUALTY )
INSURANCE COMPANY, )
             )
     Plaintiff, )
             )
vs. )  Case No. CIV-10-1302-M
             )
PROVIDENCE HOLDINGS, INC., et al., )
             )
     Defendants. )

## ORDER

Before the Court is plaintiff's Motion to Remand, filed December 28, 2010. On February 3, 2011, defendant Oppenheimer & Co., Inc. ("Oppenheimer") filed its response. Based upon the parties' submissions, the Court makes its determination.

I. Introduction[1]

Park Avenue is an Oklahoma insurer that primarily offered large deductible workers' compensation policies in the Professional Employment Organization industry. Park Avenue is a wholly owned subsidiary of Park Avenue Insurance, LLC ("PAI"). PAI, in turn, was wholly owned by Charles Antonucci. Park Avenue was formerly owned by Providence Holdings, Inc. ("PHI"), which in turn was owned by several individual defendants named in this lawsuit.

On October 22, 2008, PAI and PHI entered into a Stock Purchase Agreement wherein PAI agreed to purchase Park Avenue from PHI for $37.5 million. Oppenheimer agreed to finance the purchase loan for PAI. As a condition precedent to making the loan, Oppenheimer and its Executive

---

[1]The facts set forth in this introduction are based upon the Petition filed in this case.

Director of Investments, Allen Reichman, instructed Park Avenue to move the bond portfolio from Wells Fargo & Co. to Oppenheimer. At the time of the sale, the bond portfolio, valued at approximately $55 million, was Park Avenue's largest asset.

The purpose of transferring the bond portfolio to Oppenheimer was so that Oppenheimer would possess it at the time of closing, which would allow Oppenheimer to use it as collateral for the loan to PAI. On the day of the closing, Oppenheimer changed the title to the portfolio from Park Avenue to PAI. Oppenheimer then loaned PAI $30 million to purchase Park Avenue, using the bond portfolio as collateral.

On October 19, 2010, plaintiff filed the instant action against defendant in the District Court for Oklahoma County, State of Oklahoma. Plaintiff asserts several state law claims against Oppenheimer and its directors and officers in relation to the handling of Park Avenue's bond portfolio. Plaintiff alleges that Oppenheimer and Mr. Reichman negligently and in violation of their fiduciary duties mishandled the bond portfolio and failed to provide sound advice. Plaintiff further alleges that they failed to act in good faith and fairly disclose all material facts and failed to advise and ensure that all transactions complied with applicable law. Plaintiff also asserts a claim for negligence per se for violation of Okla. Stat. tit. 36, § 1653, which, among other things, requires domestic insurers to provide certain information if they intend to merge with another company or be purchased. Further, plaintiff alleges that Oppenheimer's officers and directors are liable in negligence and for breach of fiduciary duties based upon their failure to supervise and monitor their employees, follow their own governing documents, maintain an effective system of controls, and adequately train their own employees. Plaintiff also asserts a claim for civil conspiracy against

Oppenheimer and all other defendants. Finally, plaintiff asserts a claim for trespass to chattel and/or conversion against Oppenheimer for the wrongful transfer of the bond portfolio to PAI.

On December 2, 2010, Oppenheimer removed this action to this Court on the basis that plaintiff's Petition raises a federal question. Specifically, in its Notice of Removal, Oppenheimer asserts that "[t]he comprehensive federal regulatory scheme pre-empts the Petition's allegations concerning any failure to supervise by Oppenheimer and its directors and officers." Notice of Removal at ¶ 2 [docket no. 1]. Oppenheimer further states: "Holland's State Petition also alleges that Oppenheimer, as a broker-dealer, mishandled a securities margin account, a subject on which the federal securities laws and rules thereunder pre-empt state law." *Id.* at ¶ 3. Plaintiff now moves this Court to remand this case back to the Oklahoma County District Court.

II.     Discussion

Under the federal removal statute, the defendant in any civil action commenced in state court may remove such action to federal district court provided that the federal court possesses original jurisdiction thereof. 28 U.S.C. § 1441(a). Where, as here, the parties to an action are not completely diverse in their citizenship, federal jurisdiction exists only if the action raises a federal question, which is to say that the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996).

When deciding whether a plaintiff's claims arise under federal law, courts are "guided generally by the 'well-pleaded complaint' rule, under which a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Schmeling*, 97 F.3d at 1339 (quoting *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). Under the well-pleaded complaint rule, the plaintiff is recognized as the "'master of the

claim' and may prevent removal by choosing not to plead a federal claim even if one is available." *Id.*

There are, however, exceptions to the well-pleaded complaint rule. For example, the "artful pleading" doctrine precludes a plaintiff from defeating removal "by failing to plead federal questions that are essential elements of the plaintiff's claim." *Id.* Also, a defendant may properly remove an action in which the plaintiff's "right to relief requires resolution of a substantial question of federal law." *Id.* A third exception is the "complete preemption" doctrine. Under the complete preemption doctrine, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). The doctrine applies when "a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Id.* at 1342.

### A. Complete preemption

Oppenheimer contends that there is complete preemption with respect to plaintiff's claim that Oppenheimer allegedly mishandled a margin account that held the alleged bond portfolio of Park Avenue. Specifically, Oppenheimer contends that because there is an extensive and pervasive federal regulatory scheme concerning margin accounts at a broker-dealer, plaintiff's claim that Oppenheimer mishandled the bond portfolio Oppenheimer held in a margin account presents a federal question, and, thus, this Court has jurisdiction.

First, the Court finds that federal securities law, in general, does not dominate the field so as to invoke the complete preemption exception to the well-pleaded complaint rule. The United

4

States Supreme Court has stated that "extraordinary preemptive power" is required to convert "an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Further, the complete preemption exception has been reserved for provisions of federal law with "preemptive force . . . so powerful as to displace entirely any state cause of action. . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). The Exchange Act, the federal securities act upon which Oppenheimer relies, contains a specific provision stating that it is intended to complement, rather than override, state securities laws. *See* 15 U.S.C. § 78bb(a). The Court finds such a "savings clause" is simply inconsistent with any finding that Congress intended that the Exchange Act have the type of extraordinary preemptive power necessary to convert plaintiff's state law claims into federal ones.

Further, the Court finds that the federal regulatory requirements, particularly the reporting requirements, that specifically relate to margin accounts are simply not a substantial issue in this case and any ruling and judgment in this case would not have any impact on the federal regulatory scheme. In contrast to the sole case Oppenheimer relies upon for its complete preemption argument, *Levitin v. PayneWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998), the claims and issues in the instant action do not conflict with the federal regulatory requirements and do not seek to impose requirements which would contradict the federal requirements. In fact, a review of plaintiff's Petition reveals that the specific type of account, i.e., margin account, that the bond portfolio was held in is unimportant in this case – plaintiff is simply objecting to the way Oppenheimer handled the bond portfolio, regardless of the type of account in which it was held.

Accordingly, the Court finds that plaintiff's state law claim that Oppenheimer allegedly mishandled a margin account that held the alleged bond portfolio of Park Avenue is not completely

5

preempted and does not, therefore, arise under federal law. Thus, this Court does not have jurisdiction based upon this claim.[2]

B. Artful pleading/substantial federal question

Oppenheimer also contends that federal law governs essential elements of plaintiff's claim that Oppenheimer allegedly failed to supervise its employees. Specifically, Oppenheimer contends that because its duty to supervise its employees and the issue of whether its supervision was appropriate or negligent turns on federal law (whether it acted in accordance with federally prescribed standards)[3], federal law is, therefore, an essential element of plaintiff's failure to supervise claim and a federal question is presented.

First, the Court would note that the duty to supervise securities employees is not solely a creature of federal law. The supervisory duty provided for in § 20(a) of the Exchange Act was "enacted to expand rather than to restrict the scope of liability under the securities laws." *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 (2d Cir. 1980). The Exchange Act specifically provides: "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity. . . ." 15 U.S.C. § 78bb(a). Further, courts have held that the "borrowing" of a federal law "as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction." *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 193 (2d Cir. 1987).

---

[2]The Court would also find that because federal securities law, in general, does not dominate the field so as to invoke the complete preemption exception to the well-pleaded complaint rule, none of plaintiff's claims are completely preempted and, therefore, the Court does not have jurisdiction on the basis of complete preemption.

[3]Specifically, Oppenheimer cites to 15 U.S.C. § 78o(b)(4)(E) and Financial Industry Regulatory Authority ("FINRA") Rules 3130, 3160, 3220, 3240, 3250, and 3270.

In the case at bar, plaintiff brings a claim for negligence and breach of fiduciary duties. State common law, not the Exchange Act rules or the FINRA rules, define the scope of Oppenheimer's duties to plaintiff. The violation of these rules are a method to assess Oppenheimer's alleged misconduct, but establishing a violation is not a necessary element of plaintiff's claims. Thus, the Court finds that plaintiff's claim that Oppenheimer allegedly failed to supervise its employees does not arise under federal law and, therefore, this Court does not have jurisdiction based upon this claim.

III. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS plaintiff's Motion to Remand [docket no. 15] and REMANDS this action to the District Court for Oklahoma County, State of Oklahoma.

**IT IS SO ORDERED this 24th day of February, 2011.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE